(No. 7088. July 1, 1943.)

GRAHAM D. LAMMERS, Respondent, v. CLYDE E. ANDERSON and ED BALANTINE, Appellants, and MYRTLE L. ANDERSON, Intervener and Appellant.

[139 Pac. (2d) 482.]

Rehearing Denied July 27, 1943.

72

J. H. Felton for appellants.

Wm. D. Keeton for respondent.

BUDGE, J.—Respondent sold, by a written contract and deed, 600 acres of land near St. Maries in Benewah County, Idaho, to Clyde E. Anderson and Myrtle L. Anderson, husband and wife. The deed conveying said land reserved for a period of two years from the date thereof (Nov. 20, 1939) to respondent the right of "ingress and egress over and across said lands * * * for logging purposes in the removal of any timber he may now own or hereafter acquire."

Approximately 230,000 feet of saw logs were cut but not removed from the premises when the time reserved in the contract and deed for cutting and removing the timber expired. Respondent, alleging that extremely bad weather prevented the timely removal of said logs, brought this action against appellants Clyde E. Anderson and Ed Balantine, employee of Anderson, to recover said logs or their value. Appellants denied each and every allegation in respondent's complaint and alleged "that all of the real property described in plaintiff's complaint and all trees,

timber, logs, and timber products now upon the said lands and premises are the sole and separate property of Myrtle L. Anderson."

Appellant Myrtle L. Anderson petitioned to be permitted to intervene in the action, which petition was granted whereupon she filed her complaint in intervention in which she alleged that she was the sole owner of the land and timber heretofore referred to, and that respondent had no right, title or interest therein, and whether or not the said logs and timber belonged to her, respondent had "no right to go upon the lands and premises for any purpose whatsoever, and that all of his rights in and to the said lands and premises, including the right to go upon the same and remove any timber or timber products, expired on the 20th day of November, 1941." Respondent answered said complaint in intervention denying the above allegations, and further alleged "That in January, 1942, [subsequent to the time fixed for removal of the timber] the defendant Clyde E. Anderson, wrote the plaintiff a letter as follows:

"Dear Sir: I have no objections to you, or any of your men going across the land to take out the logs, except I do not approve of and will not allow Norman McCall, or his men, to go upon the land to haul out logs, or for any purpose,—in other words, I want this man McCall and his employees to stay off the place.

"With this understanding, you and I will have no trouble, so long as you keep the gates closed. It is important that you keep these gates closed because I have stock running in the fields."

Respondent further alleged that "the defendant, Clyde E. Anderson, orally extended the time for moving the logs from the land, but when the plaintiff got ready to move the logs from the land in question during the hauling season of 1942, the defendants Anderson and Balantine kept the gate locked and refused access to the road necessary to take the logs out."

The cause was tried to the court without a jury, and judgment awarded in favor of respondent to the effect that respondent was entitled to the right to enter upon the premises of appellants and to remove the cut and fallen timber therefrom, or in lieu thereof and in event recovery could not be had of said fallen timber, respondent was to

have and recover of and from appellants the sum of $1200, from which judgment this appeal is prosecuted.

Bearing upon the construction of the reservation as to the time limited within which the timber was to be removed, R. C. Lammers, father of respondent, was asked and made answer to the following questions:

"Q. You intended to complete all logging before November 20, 1941?

"A. Yes.

"Q. And it was understood that all rights ceased on the place November 20, 1941?

\* \* \* \*

"A. I could answer that in this way; any timber at the expiration of that contract belonged to Mr. Anderson. There was considerable of it left."

There are two questions involved on this appeal. First, did respondent by reason of his failure to remove the cut and fallen timber before the expiration of the time limited in the contract and deed lose all his right, title and interest in said fallen timber and the right to remove the same? Second, did appellant, Clyde E. Anderson, extend the time for removal of said fallen timber?

The rule would seem to be, supported by the great weight of authority, that where a grantor conveys lands upon which there is timber, standing or lying, reserving for a specified time the right to enter upon the lands and cut and remove timber therefrom, time is of the essence of the contract and the timber must be removed within the time so limited. Otherwise title thereto reverts to the grantee of the land.

In *Sandy Holding Co. v. Ferro*, 144 Ore. 466, 25 P. (2d) 561, the rule is announced as follows:

"The contract under which the defendant claims merely granted his predecessor in interest the right to remove the timber before a certain date. So much of the timber as was removed by him before the date fixed in the contract, or any extension thereof, would belong to him. Such of the timber as had not been removed by him, although cut, within the time agreed upon, would belong to the owner of the land and the defendant would have no interest therein."

In *Mallet v. Doherty*, 180 Cal. 225, 180 P. 531, the following language is used:

"Contracts for the sale of standing trees to be removed within a specified time have generally been construed by the courts as sales of only so many trees as the vendee might cut and remove within the time designated, the balance remaining the property of the vendor."

Likewise, as was stated in *Lehtonen v. Marysville Water & Power Co.*, 50 Wash. 359, 97 P. 292:

"The contract of reservation provides that it shall be removed within a given time. If it was the intention of the parties that the timber might be removed after that time, the limitation means nothing and was misleading."

In *Allen & Nelson Mill Co. v. Vaughn et al.*, 57 Wash. 163, 106 P. 622, in construing a contract similar in effect to the one now before us, it is therein said:

"* * * the purchaser should have the three years specified for a removal of the timber whether standing or lying down, and that at the expiration of that time his interest in the timber should cease, and that the title to the timber would then be in the person owning the land. What possible interest would the seller have in the date when the timber should be cut down, if there was to be no limit on the time of its removal from the land? That would be a matter which would be of interest only to the buyer, and concerning which he would not be likely to counsel or contract with the seller. In many of the contracts which have been construed by the courts the language is 'cut and remove,' but it is evident that the main consideration, even in those cases, is the removal. * * * He knew that under the plain provisions of the contract—and it is difficult to see how it could be made plainer—he had three years from the date of the contract in which to remove said timber. His action in cutting more timber than he could or would remove in that time was an evasion of both the letter and spirit of his contract and he must suffer the consequences * * *." To same effect see following cases: (*Foster v. Comm'r of I. R.*, 57 F. (2d) 516; *W. T. Smith Lbr. Co. v. Walker*, 218 Ala. 546, 119 So. 663; *Floyd Elkhorn Consol Collieries v. Mart'n*, 223 Ky. 452, 3 S.W. (2d) 1074; *Willetts Wood Products Co. v. Concordia Land & Timber Co.*, 169 La. 241, 124 So. 841, certiorari denied *Concordia Land & Timber Co. v. Willetts Wood Products Co.*, 50 S. Ct. 348, 281 U.S. 742, 74 L. Ed. 1156; *Finkbine Lbr. Co. v. Saucier*, 150 Miss. 446, 116 So. 736; *Austin v. Brown*, 191 N.C. 624, 132 S.E. 661; *Martin*

*v. So. Pine Lbr. Co.*, 284 S.W. 918, reversing (Civ. App.) *So. Pine Lbr. Co. v. Martin,* 274 S.W. 181; 15 A.L.R. (Ann.) p. 41; 17 R.C.L., par. 14, p. 1085.)

█ The contract and deed here involved specifically provides that the grantor may go upon the lands of grantee and remove therefrom "all green standing merchantable Idaho White or Ponderosa Pine, Red Fir and Larch Timber and Cedar poles now standing and being upon the within described lands * * * for a period of two (2) years from date hereof and said grantor shall have the privilege of ingress and egress over and across said lands * * * for logging purposes in the removal of any timber he may now own or hereafter acquire, * * *." Respondent failed to comply with the plain and specific terms of the contract by his failure to remove the logs in question within the fixed time, thereby losing all his right, title and interest in and to said logs.

Coming now to the second question, namely, whether or not respondent granted an irrevocable extension of time within which to remove the logs. It is conceded that no consideration was paid for said alleged extension, and no expenditures made by respondent upon the faith of the license. Neither did the trial court find that respondent's failure to remove the logs within the specified time was caused or prevented by any act of appellants; but it did find that the logs were not removed prior to November 20, 1941, by reason of the fact of prevailing weather conditions in that locality at that time.

█ The rule is well established in support of appellants' contention that the alleged extension was but a mere revocable license. (*Sweeney v. Bird,* 293 Mich. 624, 292 N.W. 506; 17 R.C.L., p. 568; 37 C.J., p. 290.) The alleged fact that prevailing weather conditions in that locality prevented their removal of the logs prior to November 20, 1941, would not operate as an extension for removal of the logs. (*Z. Harrell & Co. v. Danks,* 151 Ky. 71, 151 S.W. 13.) Respondent knew or should have known the length of the logging season, when logs could be cut and removed in that locality and should have refrained from cutting more logs than he could remove within the time limited by the reservation in the deed and contract. Upon this point R. C. Lammers, father of respondent, was asked and made answer to the following questions:

"Q. And what was the season as to hauling, Mr. Lammers, or as to the feasibility of trucking logs?

"A. Well, the summer times is about the only time you can truck logs in the country—when it is dried up. Sometimes if it is frozen, as in winter, one can truck.

"Q. Is this logging chance a summer chance?

"A. Yes.

"Q. And the season during which the logs can be moved is not long?

"A. It is usually July, August and September and sometimes October."

Respondent took a summer chance and lost. It not appearing that respondent was prevented from removing the logs within the specified time in the contract and deed by act of God or grantee, or by some unforeseen misfortune, and that the alleged extension made subsequent to the expiration of the time for removing the logs was irrevocable, the judgment cannot be sustained, and will be and the same is hereby reversed and the cause remanded with instructions to enter judgment in favor of appellants.

Costs to appellants.

Holden, C.J., and Ailshie, Givens, and Dunlap, JJ., concur.